**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02549-GPG-NRN

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

> Plaintiff,

v.

**'MURICA, LLC d/b/a STARLITE STATION, JAMES JENNINGS, and LOU DELLA
CLAYBURGH, a/k/a DELLA CLAYBURGH,**

> Defendants.

---

**AMENDED COMPLAINT**

---

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex, to correct unlawful retaliation and interference, and to provide appropriate relief to Charging Parties, identified below, and other Aggrieved Individuals harmed by the unlawful employment practices described. As alleged more fully below, the Equal Employment Opportunity Commission ("EEOC") alleges that Defendant 'Murica, LLC d/b/a Starlite Station ("Defendant 'Murica") subjected its employees to discrimination in the terms and/or conditions of employment on the basis of sex, including that Defendant 'Murica, through its owner, subjected both male and female employees to a hostile work environment and that Defendant 'Murica retaliated against its employees, including but not limited to firing, disciplining, and filing tort claims against employees who opposed Defendant 'Murica's unlawful employment practices. Defendants

Jennings and Clayburgh are the sole owners and members of 'Murica, LLC, and individually liable because they failed to maintain and respect corporate structures and formalities, instead using the corporation as a proxy for furthering their personal interests.

## I.    JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2.    This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3), and § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3.    The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado and venue properly lies in the District of Colorado.

## II.  PARTIES

4.    Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC") is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by §706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5.    Defendant 'Murica LLC is a Colorado Limited Liability Company, formed on or around July 26, 2017.

6.    At all relevant times, Defendant James Jennings ("Jennings" or "Owner Jennings") and Defendant Della Clayburgh ("Clayburgh" or "Owner Clayburgh") were the co-owners and sole members of Defendant 'Murica.

7.     Defendants Jennings and Clayburgh have substantial contacts with Colorado by maintaining Starlite Station in Colorado as Defendant 'Murica's principal place of business and through continuing and systemic business contacts within Colorado.

8.     At all relevant times, Defendant Jennings was a resident of Colorado.

9.     At all relevant times, Defendant 'Murica conducted business in the State of Colorado.

10.    At all relevant times, at least including from November 10, 2018 through at least March 15, 2020, and also from August 1, 2020 through October 31, 2021, Defendant 'Murica had at least 15 employees.

11.    At all relevant times, Defendant 'Murica was an employer engaged in an industry affecting commerce under §§ 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

12.    Defendant 'Murica is the alter ego of Defendants James Jennings and Della Clayburgh.

    a.   At all relevant times, Jennings and Clayburgh shared unity of interest with Defendant 'Murica.

    b.   It would be an injustice to not pierce the corporate veil to name Jennings and Clayburgh as defendants. Defendant 'Murica has ceased operations as of November 2021, and indicated that it has no assets to satisfy any forthcoming judgment. Without piercing the corporate veil, the EEOC will be unable to obtain adequate relief if it establishes the violations alleged.

    c.   Allegations in ¶¶ 161–187 are incorporated by reference.

### III.    ADMINISTRATIVE PROCEDURES

13.    More than 30 days prior to the institution of this lawsuit, each of the following individuals filed charges of discrimination with the EEOC alleging violations of Title VII:  Casey Zook,

Caitlin Betz, Michael Chacon, Chase Decker, Gary DeJohn, Alycia Ramos, and Elizabeth Grant ("Charging Parties").

14.    The EEOC provided Defendant 'Murica notice of each of the charges of discrimination filed by the above-named Charging Parties.

15.    On September 3, 2021, the EEOC sent to Defendant 'Murica Letters of Determination as to each charge of discrimination filed by the Charging Parties ("Letters of Determination").

16.    In each Letter of Determination, the EEOC found reasonable cause to believe that Defendant 'Murica had violated Title VII.

17.    The Letters of Determination also invited Defendant 'Murica to join with the EEOC in informal conciliation efforts to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

18.    The Commission engaged in conciliation efforts with Defendant 'Murica to provide it the opportunity to remedy the discriminatory practices described in the letters of determination.

19.    The EEOC was unable to secure from Defendant 'Murica a conciliation agreement acceptable to the Commission.

20.    On February 15, 2022, the EEOC issued to Defendant 'Murica LLC d/b/a Starlite Station a Notice that efforts to resolve its determinations through a conciliation agreement acceptable to the Commission had been unsuccessful.

21.    All conditions precedent to the institution of this lawsuit have been fulfilled.

### IV.    GENERAL ALLEGATIONS

### A.  Defendant 'Murica's Operations, Hiring, and Management

22.    From approximately October 1, 2018 through on or around October 31, 2021, Defendant 'Murica operated a "country restaurant, dancehall, and bar" in Greeley, Colorado, under the registered Trade Name "Starlite Station," located at 1742 Greeley Mall, Greeley CO ("Starlite Station").

23.    Starlite Station began formally and informally soliciting applications from potential employees in approximately August 2018.

24.    Starlite Station opened to the public no later than November 10, 2018.

25.    Starlite Station had at least 15 employees no later than November 10, 2018.

26.    Each of the above-named Charging Parties was hired by 'Murica during approximately August–November 2018.

27.    From approximately September 2018 through March 2019, Charging Party Gary DeJohn acted as Starlite Station's General Manager.

28.    At all relevant times, Owner Jennings had authority to bind Defendant 'Murica and to act on its behalf.

29.    At all relevant times, Owner Jennings took an active role in managing Starlite Station.

30.    Beginning in approximately August 2018, Owner Jennings took an active role in recruiting, selecting, and hiring employees for Starlite Station.

31.    At all relevant times, Owner Jennings had managerial and supervisory authority over all of Starlite Station's employees.

**B. Defendant's Creation of a Sexually Hostile Work Environment for Females Employees**

32.    While hiring female employees in approximately August–October 2018, Owner Jennings frequently made offensive, sex-based, and discriminatory comments about female job applicants. Examples of such comments include:

      a.    Jennings made comments to Chase Decker, or in Decker's presence, to the effect that certain female applicants were "too ugly" to be hired;

      b.    Jennings made comments to Decker, or in his presence, to the effect that a female applicant should not be hired because she was "not fuckable";

      c.    Jennings made a statement to DeJohn and/or others to the effect that a female applicant should not be hired because Jennings claimed he had "already fucked her."

33.    Beginning in approximately September 2018, and continuing throughout his involvement in Defendant 'Murica's operation of Starlite Station, Owner Jennings frequently made sex-based comments about female employees' appearance.  Examples of such comments include:

      a.    In formal and/or informal staff gatherings, Owner Jennings repeatedly commented about female employees' weight or appearance;

      b.    Owner Jennings made comments indicating that Jennings expected female employees to be thin and wear revealing clothing;

      c.    Owner Jennings made comments suggesting that female employees who were thin and wore revealing clothing were not in danger of losing their jobs, while suggesting that female employees who gained weight or whose appearance he

disapproved of were at risk of being discharged and/or being scheduled for fewer hours.

34.    Beginning in October 2018 and continuing throughout his involvement in the operation of Starlite Station, Owner Jennings frequently made unwanted physical contact with female employees that was sexual in nature and/or because of their sex.  This included, for example, frequently touching female employees without their permission, including on the exposed skin of the midriff or lower back while wearing the revealing outfit of halter tops and short, "Daisy Duke" shorts that Jennings encouraged female bar employees to wear.

**C.  Defendant's Creation of a Sexually Hostile Work Environment for Male Employees**

35.    Jennings repeatedly made offensive sexual and sex-based comments about female applicants and employees to or in the presence of male employees or other males, including but not necessarily limited to Charging Parties Decker and DeJohn.

36.    On one or more occasions in approximately September–October 2018, Decker told Jennings that he (Decker) objected to Jennings' comments about female job applicants, including objection to: comments about applicants being "not fuckable"; comments about applicants'/employees' breasts or bottoms; and similar sex-based and offensive comments about female job applicants'/employees' bodies and appearance.

37.    Decker told Jennings his comments and actions were "sexual harassment" and not acceptable.

38.    Decker repeatedly objected to Jennings' sexual and sex-based comments about female job applicants and/or employees.

39.    Despite Decker's objections, Jennings continued to make offensive sexual and sex-based comments about female job applicants and/or employees, including to and in the presence of Decker or other males.

40.    Jennings' sex-based comments about female applicants' appearance and/or sexuality were offensive to Decker.

41.    Jennings' sex-based comments about female applicants' appearance and/or sexuality were offensive to a reasonable listener.

42.    Jennings' sex-based comments about female applicants' appearance and/or sexuality were directed to Decker and/or other males because they were male.

43.    Jennings' sex-based comments regarding female applicants' or employees' appearance were directed to Decker and/or other male employees because of a sex-based belief or stereotype that men would not object to Jennings' sex-based statements and views about females.

44.    Jennings' sex-based comments regarding female applicants' or employees materially worsened the terms and conditions of employment for Decker and/or other male employees subjected to them.

45.    As a result of Jennings' sex-based comments regarding female applicants or employees, Decker and/or other male employees were required to accept Jennings' continued comments or to confront their boss and business owner, Jennings.

46.    As a result of Jennings' continued comments and statements about female job applicants and/or employees, the terms and/or conditions of Decker's work environment became intolerable to Decker and to a reasonable person.

47.    Decker resigned on or around November 20, 2018 because continued employment in the conditions created by Defendant 'Murica and Owner Jennings was intolerable.

48.    Beginning in September 2018 Jennings also made offensive and unwelcome sexual or sex-related comments to and about at least one male employee, Charging Party Michael Chacon.

49.    During the hiring process, Jennings asked Chacon "who are you sleeping with?" or equivalent words.

50.    During Chacon's employment, Jennings frequently made unwelcome comments to Chacon about his sex life, and continued asking Chacon about his sexual relationships, including, for example, asking Chacon who he was having sex with, and asking whether he was having sex with one or more female co-workers.

51.    Jennings' sexual comments and questions to Chacon were made because of Chacon's sex, male, and/or based on a belief or stereotype that Chacon, as a male, would not object to offensive questions or comments about his sexual relationships, or that males, generally would be interested in comparing or bragging about their sex lives with Jennings.

52.    The sexual comments and questions Jennings directed to Chacon were intrusive, unwelcome, and offensive to Chacon.

53.    Jennings' offensive sexual and sex-based comments — including comments to male employees regarding female applicants and/or employees, and comments to male employees regarding their own sexual activities or sex lives — were sufficiently severe and/or pervasive to alter the terms and conditions of employment.

### D. Owner Jennings' Harassment and Offensive Sexual Contact with Specific Female Employees

54.    Beginning in October 2018, Owner Jennings directed flirtatious and/or personal sexual communications and actions to multiple female employees.

55.    Jennings engaged in such communications both during and outside of work hours.

56.    Jennings used such communications to pursue romantic or sexual relationships with multiple female employees.

### i. Charging Party Casey Zook

57.    After Casey Zook began employment, Jennings sent her multiple flirtatious and/or sex-based communications, through text messages and other messaging applications, such as commenting to Zook that she looked "so sexy," including in the revealing attire Jennings encouraged for female bar staff.

58.    On one or more occasions during or after Zook's work shifts, Jennings told Zook he wanted to go home with her at night after Starlite Station closed.

59.    On or about November 3, 2018, while Zook was working at the Starlite Station bar, Jennings made unwelcome physical contact of a sexual nature with Zook, including pressing his body against hers and trying to kiss her and/or partially undress himself.

60.    After the encounter, Zook asked Jennings to stop any communications with her that were not related to work.

61.    After Zook asked Jennings to stop personal communications, Jennings prepared a written "incident report" related to the physical contact on or around November 3, 2018.

62.    Zook did not believe the "incident report" should be required.

63.    Jennings required Zook to sign the "incident report."

64.    In or around November 2018, Jennings claimed, to DeJohn and other employees in a

meeting, that he had sex with Zook.

65.    Zook was discharged less than two weeks later, on or around November 24, 2018.

66.    Jennings made the decision to discharge Zook.

67.    On information and belief, Defendant 'Murica discharged Zook for discriminatory and/or

retaliatory reasons, including because she had declined to engage in sexual behavior or a sexual

relationship with Owner Jennings, including on or after November 3, 2018, and/or in retaliation

for her opposition to his offensive sexual conduct.

## ii.   Charging Party Caitlin Betz

68.    Owner Jennings directed unwelcome flirtation and sex-based communications to Caitlin

Betz beginning near the start of her employment at Starlite Station, in approximately September

2018.

69.    Jennings' flirtatious and/or sex-related communications with Betz were unwelcome to

Betz.

70.    On one or more occasions beginning in approximately October 2018, Jennings pressured

Betz to let him sleep at her home after Starlite Station closed.

71.    On one or more occasions in approximately November 2018, when Betz acceded to

Jennings' pressure to let him sleep at her home, Jennings initiated unwelcome physical sexual

contact with Betz.

72.    The unwelcome physical sexual contact included, without limitation, touching Betz's

breasts, buttocks, and other body parts.

73.    Betz did not consent to this physical contact.

74.     In approximately December 2018, Jennings communicated to Betz that he could promote
Betz from a "shot girl" position to a bartender position for which she would otherwise not be
considered at the time.

75.     From the manner of Jennings' communications regarding the possible promotion to
bartender, Betz understood that Jennings meant he would consider promoting her if she agreed to
sexual contact or communications with him.

76.     Betz was not promoted to bartender.

### iii.   Charging Party Alycia Ramos

77.     Defendant 'Murica hired Alycia Ramos as a "shot girl" on approximately October 8, 2018.

78.     Beginning around the start of Ramos's employment, Jennings sent her frequent
communications, including text messages, that were flirtatious and/or sexual and unrelated to
work.

79.     Jennings' text messages and other flirtatious or sex-related communications with Ramos
were unwelcome to her.

80.     Ramos felt that because Jennings was her boss and the business owner she was required to
accept his unwelcome communications.

81.     On January 15, 2019, while off duty, Ramos was served alcohol at Starlite Station.

82.     Jennings was present and consumed alcohol at Starlite Station with Ramos on January 15,
2019.

83.     On January 15, 2019, after Ramos was intoxicated, Jennings had sexual intercourse with
her in his office at Starlite Station.

84.   Ramos was too intoxicated to consent to sexual intercourse on the night of January 15, 2019.

85.   Ramos was too intoxicated to clearly remember the events of January 15, 2019, the following morning.

86.   Jennings knew or should have known that Ramos was too intoxicated to consent to sexual intercourse.

87.   A security camera Jennings kept in his office captured video of the encounter between Ramos and Jennings.

88.   Within days, Ramos reported to General Manager DeJohn that Jennings had engaged in sex with her on the Starlite Station premises on January 15, 2019, and that she was too intoxicated to consent to or recall the events.

89.   After January 15, 2019, Ramos indicated to Starlite Station, including to Manager DeJohn, that she wanted to avoid further interactions with Jennings, including at work.

90.   Starlite Station initially gave Ramos assurances that she would not need to have further contact with Jennings.

91.   Despite initial assurances to Ramos, she was nevertheless required to interact and work with Jennings during scheduled work shifts.

### iv.   Charging Party Elizabeth Grant

92.   Elizabeth Grant was in a sexual/romantic relationship with Owner Jennings prior to February 2019.

93.   Grant ended her relationship with Owner Jennings in approximately February or March 2019.

94.    After Grant ended her relationship with Owner Jennings, he pressured her to continue or resume the relationship.

95.    After Grant ended her relationship with Owner Jennings, his treatment of her in the workplace materially worsened.

### E. Employee Opposition to Sexual Harassment and Unlawful Employment Practices and Retaliatory Acts

96.    Shortly after January 15, 2019, other Starlite Station employees learned of Jennings' on-premises sex with Ramos.

97.    On information and belief, following January 15, 2019, General Manager DeJohn communicated to Owner Jennings that DeJohn would resign unless Jennings stopped his harassment of, and sexual pursuit of, female employees.

98.    In late January and early February 2019, several other Starlite Station employees, including Ramos, Chacon, and Betz, communicated to Starlite Station their disapproval of Jennings' harassment of female employees, and his actions with Ramos in particular.

      a.    Chacon sent a formal "letter" to Owner Jennings via Facebook Messenger, summarizing his complaints in writing.

      b.    Other employees, including Ramos and Betz, complained directly to Manager DeJohn.

99.    On or around February 13–15, 2019, several employees communicated to Starlite Station that because of their opposition to Jennings' conduct towards female employees and with Ramos in particular, they were not willing to work with Jennings, or work in portions of the Starlite Station facility where Jennings would be present.

100.  Following February 13-15, 2019, employees who communicated their opposition to

Jennings' harassment of female employees were subjected to discipline by Defendant 'Murica.

101.  After February 13-15, 2019, Ramos was told she could not return to work unless she spoke

with Starlite Station's attorney(s) and signed then-unspecified documents.

102.  Ramos declined to meet with Starlite Station's attorney(s) or sign documents related to the

events of January 15, 2019, and related later dates.

103.  Because Ramos did not meet with Starlite Station's attorney(s) and did not agree she

would sign Starlite Station's documents, Defendant 'Murica discharged her.

104.  Defendant 'Murica gave disciplinary documents described as "counseling memos" to

Ramos and other employees who opposed Jennings' harassment of female employees.

105.  Ramos, Betz, and Chacon were among the employees given "counseling memos" by

Defendant.

106.  The "counseling memos" asserted the employee who opposed Jennings' discriminatory

and harassing conduct had violated company policy by "complaining" and "gossiping" conduct

that ~~the~~ Defendant 'Murica deemed as subject to discipline.

107.  On March 15, 2019, Ramos reported to the Greeley Police Department that Jennings had

sexually assaulted her on January 15, 2019.

108.  On or around March 15, 2019, attorneys acting for Defendant Jennings sent letters to

multiple former employees, including Charging Parties Decker, DeJohn, and Zook ("Cease and

Desist Letters").  These Cease and Desist Letters demanded the recipients recant or delete certain

public statements, including social media postings, which objected to and/or opposed Jennings'

sexual harassment of female employees, particularly including his treatment of Ramos on and after January 15, 2019.

109.  The Greeley Police Department and/or Weld County District Attorney's Office provided information related to Jennings' actions on January 15, 2019, to City of Greeley liquor licensing officials.

110.  On or around March 22, 2019, the City of Greeley suspended Starlite Station's liquor license.

111.  Greeley's suspension of Starlite Station's liquor license arose, in whole or in part, from the on-premises sexual contact between Jennings and Ramos on January 15, 2019.

112.  Starlite Station's liquor license was restored on or around April 4, 2019, subject to a stipulation entered by Starlite Station.

113.  The stipulation Starlite Station entered with the City of Greeley provided, among other terms, that Owner Jennings would "not be on the licensed premises."

114.  The conditions of the stipulation Starlite Station entered with the City of Greeley remained in place until on or around December 12, 2019.

115.  During the period from approximately April 4, 2019 through December 12, 2019, co-owner Clayburgh was designated by Starlite Station to act as "Managing Owner" as a provision of the stipulation Starlite Station entered with the City of Greeley.

116.  At all relevant times, co-owner Clayburgh resided in Sheridan, Wyoming.

117.  Co-owner Clayburgh was never regularly physically present at the Starlite Station facility in Greeley.

118.  Co-owner Clayburgh never had primary decision-making authority for Starlite Station.

119.  From approximately late March through June 2019, Mark Van Auken acted as Starlite Station's General Manager.

120.  During the period from approximately April 4, 2019, through December 12, 2019, Owner Jennings continued to hold the same ownership interest in Defendant 'Murica.

121.  During the period from approximately April 4, 2019, through December 12, 2019, Owner Jennings continued to have authority to act for Defendant 'Murica.

122.  During the period from approximately April 4, 2019, through December 12, 2019, Owner Jennings continued to exercise a managerial role in Starlite Station's operations.

123.  In approximately April or May 2019, then-acting General Manager Van Auken communicated to Charging Party Grant that Owner Jennings wanted Grant fired.

124.  In approximately June 2019, Charging Party DeJohn resumed the role of General Manager, at the request of co-owner Clayburgh.

**F.  Additional Discriminatory and Retaliatory Acts by Defendant 'Murica and Owner Jennings**

125.  Owner Jennings returned to acting as Starlite Station's regular on-site Manager and/or Managing Owner on or around December 12, 2019.

126.  Within days after Jennings' return on or around December 12, 2019, he distributed a written communication to employees titled a "Climate Survey."

127.  Charging Party Grant completed a response to the "Climate Survey" distributed by Jennings.

128.  Charging Party Grant's response to the "Climate Survey" indicated her objection to sexual harassment of female employees by Owner Jennings.

129.  For example, the "Climate Survey" requested, in part, a list of "top five individuals that you believe have altered or violated policy & procedure . . . . Most Egregious Violations First Please . . . ."  Grant responded, in part, "James Jennings . . . Having sexual relationships w/ 3 employees (2 on premises) . . . .James Jennings . . . had a screenshot of a Starlite Station employee[']s rear end saying "I'd recognize that ass anywhere . . . James Jennings . . . A Starlite employee was drunk in the bathroom & later told me 'I could have fucked ***** if I wanted."

130.  After receiving Grant's response to the "Climate Survey," Owner Jennings questioned Grant about her responses.

131.  Owner Jennings' questioning of Grant was sufficiently lengthy and accusatory that Grant felt she was being "interrogated."

132.  After questioning Grant about her responses to the "Climate Survey," Jennings accused Grant of violating company policy and indicated she could be subject to employee discipline.

133.  The conduct for which Jennings threatened to discipline Grant, including providing complimentary drinks to customers or employees, was common among other staff and employees, including Jennings.

134.  On information and belief, Starlite Station did not threaten or impose similar discipline for other employees whose conduct was equivalent to the conduct for which Starlite Station threatened to discipline Grant.

135.  Starlite Station's threat and intent to discipline Grant was discriminatory based on her sex and/or ending her prior sexual relationship with Jennings, and/or was retaliatory based on her protected conduct.

136.  Grant resigned on or about December 15, 2019.

137. Grant resigned because her working conditions had become intolerable.

138. Conditions making working conditions intolerable to Grant, and intolerable to a reasonable employee included, without limitation, renewed immediate supervision and harassment by Jennings; Jennings' hostile and retaliatory response to Grant's response to the "Climate Survey"; Jennings' negative treatment of Grant based on her ending their prior sexual relationship; the prior communication to Grant by manager Van Auken that Jennings wanted Grant to be fired; and Jennings' threats of discriminatory discipline.

139. Grant was constructively discharged, based on work conditions that had become intolerable to a reasonable employee.

140. Charging Party DeJohn resigned on or around December 14, 2019.

141. DeJohn resigned because his working conditions became intolerable upon Jennings' return to active on-site management for Starlite Station.

142. Conditions making DeJohn's working conditions intolerable to him, and to a reasonable person included, without limitation, DeJohn's history of opposition to Jennings' harassment of female employees; Jennings' track record of retaliation against other employees who opposed sexual harassment; DeJohn's prior communications with Jennings regarding Jennings' treatment of Ramos, including Jennings' display of the security video to other individuals; DeJohn's receipt of a "cease and desist" letter in March 2019 from attorneys representing Defendant Jennings individually; and Jennings' use of the "climate survey" indicating continued discriminatory and retaliatory conduct towards Grant and other employees who objected to Jennings' conduct.

143.   DeJohn was constructively discharged, based on work conditions that had become intolerable to a reasonable employee.

### G.  Defendant 'Murica's Lawsuit Against its Employees, Including Charging Parties

144.   On January 15, 2020, Defendant, 'Murica LLC and Owner Jennings filed a lawsuit in Weld County District Court (the "Weld County Lawsuit") pursuing defamation and other tort claims against Charging Parties Betz, Decker, Ramos, Zook, Grant, and DeJohn, and two other non-employees.

145.   The claims Defendant 'Murica and Owner Jennings filed against the named Charging Parties in the Weld County lawsuit arise from statements or actions made objecting to or opposing Owner Jennings' sexual harassment and/or Starlite Station's unlawful employment practices.

146.   In particular, the claims Defendants 'Murica and Jennings filed against the named Charging Parties in the Weld County lawsuit are based on statements made by former employees and others objecting to Jennings' act of having sexual intercourse with Ramos on the Starlite Station premises when she was intoxicated, and statements reasonably characterizing Jennings' conduct as a rape or sexual assault.

147.   The claims Defendants 'Murica and Jennings pled against the named Charging Parties in the Weld County lawsuit seek to make the named charging parties financially liable for their opposition to Jennings' sexual harassment of female employees, including sexual assault of Ramos, or opposition to actions they reasonably and in good faith believed to be unlawful

employment practices and/or for filing charges of discrimination, or participating in or assisting EEOC investigation(s) and/or proceedings.

148.  Defendants 'Murica and Jennings filed claims in the Weld County Lawsuit against the above-named Charging Parties, in whole or in part, because of their opposition to ~~Defendant's~~ unlawful employment practices of Defendant 'Murica.

149.  Defendants 'Murica and Jennings filed claims in the Weld County Lawsuit against the above-named Charging Parties, in whole or in part, because of their filing charges with the EEOC, and/or assisting, testifying in ~~/and /~~or participating in the EEOC's investigation and proceeding(s), and/or with a motivation to halt or discourage the Charging Parties or other employees from further communicating with the EEOC or participating in the EEOC's investigation(s) or proceeding(s).

150.  On or around January 5, 2021, Defendants 'Murica and Jennings executed settlement agreements resolving claims in the Weld County Lawsuit with certain Charging Parties, including Grant, DeJohn, and Zook (the "Settlement Agreements").

151.  The Settlement Agreements include terms that retaliate against the Charging Parties for having engaged in protected activity, including for filing charges with the EEOC, making statements during the EEOC's investigation describing and opposing Starlite Station's unlawful employment practices.

152.  The Settlement Agreements include terms that unlawfully restrict and interfere with the Charging Parties' participation and cooperation with EEOC investigation(s) and proceeding(s).

153.  For example, the Settlement Agreements condition the dismissal of claims in the Weld County lawsuit on

    a.  each employee's agreement to "use their best efforts . . . to immediately

        withdraw, dismiss and bring an end to all Colorado Civil Rights Division and/or

        EEOC claims/charges";

    b.  each employee's statement that "this settlement agreement renders any

        claims/charges [the employees] have with the . . . EEOC moot and are fully

        satisfied;" and,

    c.  each employee's agreement to execute an affidavit prepared by Defendants

        'Murica and Jennings and their attorneys which materially contradicts and/or

        disavows statements previously made to the EEOC.

## H.  Defendant 'Murica's Recent Status and Activities

154.  Defendant 'Murica ceased operations of the Starlite Station facility on or around October 31, 2021.

155.  On information and belief, Defendant 'Murica ceased operations of Starlite Station after the building owner terminated its lease with Defendant 'Murica.

156.  On or around May 20, 2021, Defendant 'Murica registered an additional Trade Name with the Colorado Secretary of State, "BOOMTOWN BEACH."

157.  As of the date of this filing, Defendant 'Murica LLC remains an active and registered LLC in good standing with the Colorado Secretary of State.

158.  On information and belief, since October 31, 2021, Defendant 'Murica has maintained an intention to resume operation of one or more bars, night clubs, and/or restaurants.

159.  Since October 31, 2021, Defendant 'Murica has taken steps representing an intention to resume operations of one or more bars, night clubs, and/or restaurants in or around Greeley, Colorado.

160.  Since October 31, 2021, Defendant 'Murica or its agents have publicized information reflecting its intention to resume operations of a bar and/or night club in or around Greeley, Colorado during 2022. For example:

      a.  Defendant 'Murica has created and maintained a Facebook Page for "Boomtown Beach" publicly representing the business as a "Dance & Night Club" that is "Coming Soon 2022."

      b.  Information provided for Starlite Station on yelp.com represents the business is "temporarily closed," and "Scheduled to reopen on November 1, 2022."

**I.  Defendants Jennings and Clayburgh Misused the Corporate Form for Their Own Benefit and Operated Defendant 'Murica as Their Alter Ego.**

161.  During the period from approximately April 4, 2019 through December 12, 2019, Owner/Defendant Jennings continued to have access to and control over Defendant 'Murica's corporate bank accounts.

162.  As a condition of becoming General Manager, Charging Party DeJohn was told by Co-owner/Defendant Clayburgh to post on Facebook expressing support for Owner/Defendant Jennings.

163.  Owner/Defendants Jennings and Clayburgh informed the Colorado Secretary of State that 'Murica, LLC was capitalized with $20,000 in funds from its owners.

164.  When Starlite Station started operations, there was $105 in the 'Murica LLC corporate account.

165.  Owner/Defendant Jennings had sole control over hiring and discharge of Starlite Station employees, except when Co-owner/Defendant Clayburgh was Acting Manager of Starlite Station.

166.  Upon information and belief, Owner/Defendant Jennings made all business decisions from Defendant 'Murica's inception through the present, except from March through December 2019, when he was barred from managing Starlite Station by an agreement with the Greeley Liquor Licensing Authority.

167.  Upon information and belief, during the time Owner/Defendant Jennings kept a camper in the Starlite Station parking lot, the camper was used as Owner/Defendant Jennings's residence.

168.   Owner/Defendant Jennings continued to reside at Starlite Station during time periods when he was prohibited from being on the property by agreement with the Greeley Liquor Licensing Authority.

169.  Throughout the operation of Starlite Station, Owner/Defendant Jennings used his personal Facebook account to promote the business.

170.  On at least one occasion, Owner/Defendant Jennings used his personal Facebook account to message a woman, asking her to apply for a position at Starlite Station.

171.  In November 2018, Owner/Defendant Jennings paid Charging Party Chase Decker wages using a check from Jennings' personal checking account.Between April 2019 and April 2021, Owner/Defendant Jennings used the 'Murica, LLC corporate accounts to make at least ten payments on a U.S. Bank personal installment loan in his name.

172.   On a liquor licensing application submitted by Co-owner/Defendant Clayburgh in September 2019, Starlite Station increased its long-term notes by $125,000 to pay for a "mortgage on a home".

173.   On at least five occasions from October 2019 through January 2022, Owner/Defendant Jennings paid the monthly payment for his truck from the 'Murica, LLC corporate accounts.

174.   Between March 2020 and March 2023, Owner/Defendant Jennings paid $500 per month from Defendant 'Murica's corporate account into a Northwestern Mutual individual savings account in Jennings's name.

175.   After Starlite Station closed in or around November 2021, furnishings, inventory, and other physical assets from the building were moved to another location.

176.   Defendant 'Murica informed the EEOC that all the moved assets were stolen from the second location sometime in December 2021.

177.   In December 2021, Owner/Defendant Jennings used a check from 'Murica, LLC to pay earnest money for the purchase of property located at 2416 27th Avenue Place in Greeley, Colorado.

178.   The property located at 2416 27th Avenue Place became Owner/Defendant Jennings' home and residence.

179.   Upon information and belief, Owner/Defendant Jennings continues to reside at 2416 27th Avenue Place, Greeley, Colorado.

180.   From at least May 2022 through February 2023, 'Murica, LLC's corporate accounts were used to pay the mortgage payment for the property at 2416 27th Avenue Place.

181.  At least one of the mortgage payments was made using money from a federal Shuttered Venue Operators Grant that Defendant 'Murica, received during the COVID-19 pandemic.

182.  Owner/Defendants Jennings and Clayburgh co-own the property located at 2416 27th Avenue Place in Greeley, CO.

183.  Between January and December of 2022, Owner/Defendant Jennings used the 'Murica, LLC corporate accounts to make payments on a Best Buy credit card in his own name.

184.  Between July 2022 and December 2022, Owner/Defendant Jennings used the 'Murica, LLC corporate accounts to make payments on an Amazon credit card in his own name.

185.  In August and September of 2022, Owner/Defendant Jennings used the 'Murica, LLC corporate accounts to make payments on a Home Depot credit card in his own name.

186.  On information and belief, Owner/Defendant Jennings did not pay his share of attorneys' fees incurred in prosecuting the Weld County Lawsuit.

187.  On information and belief, all money paid to the law firm representing both Owner/Defendant Jennings and Defendant 'Murica in the Weld County lawsuit, was paid from 'Murica, LLC's corporate accounts.

### V.    CLAIMS FOR RELIEF

#### COUNT I
**Sexual Discrimination / Sexual Harassment (Hostile Work Environment Based on Sex (Female); *Quid Pro Quo Sexual Harassment*) — 42 U.S.C. § 2000e-2(a)**

188.  All allegations above are hereby fully incorporated by reference.

189.  Beginning no later than September 2018 and continuing at least through October 31, 2021, Defendant 'Murica engaged in unlawful employment practices in violation of §§ 703(a), 42

U.S.C. § 2000e-2(a)(1), by subjecting female employees, including but not limited to Charging Parties Betz, Grant, Ramos, and Zook, to a hostile work environment based on sex.

190.  Beginning no later than September 2018 and continuing at least through October 31, 2021, Defendant 'Murica's owner and agent, Owner Jennings, engaged in sexually abusive conduct and made offensive sexual remarks to and about female employees.

191.  The sex-based comments and/or conduct directed to female employees were unwelcome to them.

192.  Owner Jennings' sex-based comments and/or conduct about female employees and/or directed to female employees were based on their sex, female.

193.  The sex-based comments and/or actions which Owner Jennings directed to female employees were sufficiently severe and/or pervasive to alter the terms and conditions of employment.

194.  Beginning no later than September 2018 and continuing at least through October 31, 2021, Defendant 'Murica and/or Owner Jennings communicated to at least one female employee, Betz, that tangible employment actions, including promotion, be conditioned on agreeing to engage in sexual communications or activities with Owner Jennings.

195.  Beginning no later than September 2018 and continuing at least through October 31, 2021, tangible adverse employment actions, including denial of promotion and discriminatory discipline, were taken against female employees, including but not necessarily limited to Charging Parties Betz and Grant, when they did not submit to Owner Jennings' pressure to engage in or prolong sexual interactions with him.

196.  The effect of the practices complained of in the foregoing paragraphs has been to change the terms and conditions of female employees' employment at Starlite Station, subject them to a hostile work environment, deprive them of equal employment opportunities, and/or otherwise adversely affect their status as employees because of their sex.

197.  Defendant 'Murica is liable for the harassing conduct, including because it was perpetrated by its owner and proxy.

198.  The unlawful employment practices complained of in the foregoing paragraphs were intentional.

199.  The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Defendant 'Murica's female employees at Starlite Station.

### <u>COUNT II</u>
**Sexual Discrimination / Sexual Harassment (Hostile Work Environment Based on Sex (Male)) 42 U.S.C. § 2000e-2(a)**

200.  All allegations above are hereby fully incorporated by reference.

201.  Beginning no later than September 2018 and continuing at least through October 31, 2021, Defendant 'Murica engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a), by subjecting male employees, including but not limited to Charging Parties Decker, DeJohn, and Chacon, to a hostile work environment based on sex.

202.  Beginning no later than September 2018 and continuing at least through October 31, 2021, Defendant 'Murica's owner and agent, Owner Jennings, directed offensive sexual remarks regarding female job applicants and employees to male employees.

203.  The sex-based comments and/or conduct regarding female employees were unwelcome to the male employees to whom and in whose presence they were made.

204.  Male employees, including but not necessarily limited to Decker, DeJohn, and/or Chacon, communicated to Owner Jennings that his comments and conduct regarding female applicants and employees were offensive and unwelcome.

205.  The sex-based comments and/or conduct regarding female employees were made to and in the presence of male employees because of their sex and/or because of sex-based stereotypes about males.

206.  The unwelcome sex-based comments were sufficiently severe and/or pervasive to alter the terms and conditions of employment for male employees.

207.  Owner Jennings made unwelcome and offensive sex-based comments to at least one male employee, Chacon, that were unwelcome, because of his sex, and were sufficiently pervasive in the totality of circumstances to alter the terms and conditions of employment.

208.  The effect of the practices complained of in the foregoing paragraphs was to change the terms and conditions of male employees' employment at Starlite Station, subject them to a hostile work environment, deprive them of equal employment opportunities, and/or otherwise adversely affect their status as employees, because of their sex.

209.  Defendant 'Murica is liable for the harassing conduct, including because it was perpetrated by its owner and proxy.

210.  The unlawful employment practices complained of in the foregoing paragraphs were intentional.

211. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Defendant 'Murica's male employees at Starlite Station.

## COUNT III
### Retaliation
### 42 U.S.C. § 2000e-3(a)

212. All allegations above are hereby fully incorporated by reference.

213. Since at least October of 2018, and continuing through the present, Defendant 'Murica has engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-3(a) by subjecting employees, including but not limited to each of Charging Parties Betz, Chacon, Decker, DeJohn, Grant, Ramos, and Zook to adverse employment actions because they opposed Defendant's unlawful employment practices, opposed acts which they in good faith believed to be unlawful employment practices, and/or because they filed a charge of discrimination, testified, assisted, and/or participated in the EEOC's investigation(s) or proceeding(s).

214. Each of the above-named Charging Parties engaged in protected activity by opposing Defendant Murica's unlawful employment practices and/or opposing actions or conduct that the employee(s) reasonably and in good faith believed to be unlawful employment practices.

215. Each of the above-named Charging Parties filed a charge of discrimination.

216. Each of the above-named Charging Parties testified, assisted, and/or participated in the EEOC's investigation of the Charges of Discrimination.

217. Defendant 'Murica subjected each of the above-named Charging Parties to one or more adverse employment actions because of their opposition to unlawful employment practices,

and/or because of their filing of a charge or participating in and assisting the EEOC's
investigation.

218.   The adverse employment actions taken by Defendant 'Murica against employees in
retaliation for protected activities include, without limitation:  actual and/or constructive
discharge; retaliatory discipline; threatening and prosecuting tort claims based on and in
retaliation for activity expressly protected by Title VII, and/or other adverse acts taken before
and/or after employment.

219.   The unlawful employment practices complained of in the foregoing paragraphs were
intentional.

220.   The unlawful employment practices complained of in the foregoing paragraphs were done
with malice or with reckless indifference to the federally protected rights of Defendant's
employees.

221.   Defendants 'Murica and Owner Jennings further retaliated by using the Weld County
Lawsuit to pressure Charging Parties or other aggrieved individuals to enter into settlement
agreements that sought to extinguish the individuals' rights to pursue then-pending EEOC
charges of discrimination, to assist and/or participate in EEOC investigations or proceedings,
and/or require them to endorse affidavits that materially disavow statements previously made to
the EEOC.

222.   The Settlement Agreements which Defendants 'Murica and Owner Jennings pursued and
entered in connection with the Weld County Lawsuit are unlawful, void, and unenforceable, in
whole or in part, because they include terms which violate of 42 U.S.C. § 2000e-3 and/or are
contrary to public policy.

223.   The Settlement Agreements which Defendants 'Murica and Owner Jennings pursued and entered in connection with the Weld County Lawsuit include provisions which unlawfully restrict employees' rights to participate in and assist EEOC investigations and proceedings and unlawfully interfere with the EEOC's investigation(s) and/or proceedings.

224.   The unlawful employment practices complained of in the foregoing paragraphs were intentional.

225.   The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Defendant Murica's employees at Starlite Station.

### COUNT IV
**Unlawful Discharge (Actual and/or Constructive Discharge) – Retaliatory & Discriminatory 42 U.S.C. § 2000e-2, 42 U.S.C. § 2000e-3**

226.   All allegations above are hereby fully incorporated by reference.

227.   Since at least October of 2018, Defendant 'Murica has engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a)(1) and or 2000e-3(a) by actually or constructively discharging employees, including but not limited to Charging Parties Betz, Chacon, Decker, DeJohn, Grant, Ramos, and Zook, because of their sex, based on sex discrimination, and/or in retaliation for opposition to Defendant Murica's unlawful employment practices and/or retaliation for filing charges with the EEOC, and/or for participating in or assisting EEOC investigation(s) or proceedings.

228.   The unlawful employment practices complained of in the foregoing paragraphs were intentional.

229.   The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Defendant Murica's employees at Starlite Station.

## PRAYER FOR RELIEF

Wherefore, the EEOC respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant 'Murica, its officers, agents, servants, employees, successors, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice that discriminates on the basis of sex.

B.      Grant a permanent injunction enjoining Defendant 'Murica, its officers, agents, servants, employees, successors, attorneys and all persons in active concert or participation with it, from engaging in any employment practice that retaliates against any employee for engaging in protected activity under Title VII.

C.      Order Defendant 'Murica to institute and carry out policies, practices, and programs that provide equal employment opportunities for all persons, regardless of sex, in order to eradicate the effects of past and present unlawful employment practices by Defendant 'Murica, including but not limited to training for all owners, managers, and employees.

D.      Order Defendant 'Murica to make whole the Charging Parties and all other identified aggrieved individuals by providing all appropriate damages authorized by law, including backpay, front pay, pre- and post-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

E.      Order Defendant 'Murica to make whole the Charging Parties and all other

aggrieved individuals by providing compensation for past and future nonpecuniary losses

resulting from the unlawful employment practices described in the paragraphs above, in amounts

to be determined at trial.

F.      Order Defendant 'Murica to make whole the Charging Parties and all other

aggrieved individuals by paying attorneys' fees and other costs associated with its retaliatory

defamation lawsuit in state court.

G.      Grant a permanent injunction preventing Defendant 'Murica, (including its

owners or agents), from enforcing any unlawful settlement agreements or waiver agreements

entered into with current or former employees, including as a result of or in connection with the

Weld County Lawsuit and claims brought therein.

H.      Enter declaratory judgment and such further relief as is needed to effectuate such

judgment, as authorized by 28 U.S.C. §§ 2201-02, including a declaration that the unlawful

Settlement Agreements described herein are void and unenforceable, in whole or in part.

I.      Order Defendant 'Murica, to pay the Charging Parties and all other aggrieved

individuals punitive damages, including as authorized by 42 U.S.C. § 1981a.

J.      Grant all equitable relief needed, including but not limited to reinstatement, to

effect justice and make whole the Charging Parties and individuals aggrieved by Defendant

'Murica's unlawful employment practices.

K.      Grant such further relief as the Court deems necessary and proper in the public

interest, including without limitation, remedies available under the Federal Debt Collection

Procedures Act, 28 U.S.C. §3001, and/or Fed.R.Civ.P. 69.

L.      Enter equitable remedies, including piercing the corporate veil of Defendant

'Murica and/or ordering *alter ego* liability as to Owner/Defendants Jennings and Clayburgh, as

allowed by law and equity and to effect justice and ~~to~~ make whole the Charging Parties and

individuals aggrieved by Defendant 'Murica's unlawful employment practices.

M.      Award the EEOC its costs of this action.

N.      Enter injunctive, equitable, and legal relief otherwise provided by Title VII and all

other relief the Court has power to design and order.

RESPECTFULLY SUBMITTED this 11th day of April 2024.

                                        Karla Gilbride
                                        General Counsel

                                        Christopher Lage
                                        Deputy General Counsel

                                        Mary Jo O'Neill
                                        Regional Attorney
                                        Phoenix District Office

                                        Rita Byrnes Kittle
                                        Assistant Regional Attorney
                                        Denver Field Office

                                        *s/ Karl Tetzlaff*
                                        _____
                                        Karl Teztlaff
                                        Senior Trial Attorney
                                        Jillian O. Edmonds
                                        Trial Attorney

                                        EQUAL EMPLOYMENT OPPORTUNITY
                                        COMMISSION
                                        Denver Field Office
                                        950 17th Street, Suite 300
                                        Denver, CO 80202
                                        Phone: (720) 779-3619
                                        karl.teztlaff@eeoc.gov
                                        jillian.edmonds@eeoc.gov

Paula S. Salazar
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, AZ 85012
Phone: (602) 661-0068
paula.salazar@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Deputy General Counsel in Washington, D.C.